## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

   v.                                  No. 1:15-CR-00621-MV

HOUSTON WALL,

       Defendant.

## DEFENDANT'S MOTION TO RESTORE, IN PART,
## THE RULE 11(c)(1)(C) SENTENCING AGREEMENT TO FIVE YEARS PROBATION

COMES NOW Defendant Houston Wall, by and through undersigned counsel Peter Schoenburg and Alicia Lopez, and hereby moves the Court to exercise its ample discretion under Fed. R. Crim. P. 11 (c)(5)(C) and restore the May 14, 2015 sentencing agreement entered into by the parties in the Plea Agreement (Doc. 25 at 4) and rejected by the Court in open court on September 21, 2016.  The sentencing recommendation by the Government and the Defendant, pursuant to Fed. R. Crim. P. 11(c)(1)(C) included the provision that "a specific sentence of five years' probation is the appropriate sentence in this case."  The Court should reconsider because most of the defense failures relied on by the Court in rejecting the agreed-to sentence of probation have proven over time to be incorrect and attributable to a lack of timeliness and failure of communication between previous defense counsel and the Probation Office.  These failures are not, in any case, fairly attributable to Houston Wall.

In support of the instant motion, defense counsel states:

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

1.      In open court on September 21, 2016, the Court found that Mr. Wall's then-defense

counsel, Ray Twohig, had failed to make complete, timely or accurate disclosure of Defendant's

financial records to the United States Probation Office (USPO), as had previously been ordered by

Visiting Judge Michael Reagan.  *See* 9/21/16 Hearing Tr. at 8-10 (describing how "defense counsel

failed to comply with Judge Reagan's order" when it provided the Probation Office with information

that "was incomplete, dated, insufficient, and very difficult to decipher" and how a listing of the

documents defense counsel provided to the Probation Office that counsel subsequently submitted to

the Court did "not prove [defense counsel's] candor to the Court, nor his adherence to Judge

Reagan's order"); *see also* Doc. 45 (Judge Reagan's 2/11/16 Order Vacating Sentencing Hearing and

Imposing New Deadlines).

2.      A complete disclosure of Mr. Wall's financial records was necessary, the Court

noted, "so that Probation could evaluate Mr. Twohig's objection to Probation's recommended fine

and to give consideration to Mr. Twohig's proposed fine."  (9/21/16 Hearing Tr. at 8:4-8:7).

3.      The court concluded:

```
10        Based on all these considerations -- that Mr. Wall has
11   violated the terms of the plea agreement and in doing so has made
12   it impossible for the Probation Office and this Court to evaluate
13   Mr. Twohig's proposed fine and that the agreement is now
14   substantially more lenient than it was at the time that it was
15   struck because restitution is impracticable -- I have decided to
16   reject the Rule 11(c)(1)(C) plea agreement.
```

(9/21/16 Hearing Tr. at 11:10-11:16).

4.      Also at the hearing, the Court noted the practical impossibility of arriving at a restitution amount, given the number of individual consumers affected by the underlying offense and the impossibility of identifying them.  *See id.,* Tr. at 11; *see also* Doc. 45 (Judge Reagan's 2/11/16 Order addressing the issue).

```
3   February 10, 2016 order, Judge Reagan concurred with the United
4   States' position that there are thousands of victims of the
5   purported fraud in this case, and formal compliance with all of
6   the provisions of the Justice for All Act of 2004 would be
7   impractical.  Therefore, Judge Reagan ordered that the number of
8   identifiable victims is so large as to make restitution
9   impracticable.
```

5.      The Court ruled, *sua sponte,* that based on both considerations – (1) defense counsel's failure to respond fully to the Probation Office's financial records requests and (2) the Probation Office's determination, supported by Judge Reagan, that restitution was impracticable – it had "decided to reject the Rule 11(c)(1)(C) plea agreement."  (9/21/16 Hearing Tr. at 11:15-11:16).

6.      At the conclusion of the hearing, defense counsel placed on the record that "I want the Court also to know that my client has provided me everything I've asked of him." (9/21/16 Hearing Tr. at 12:20-12:21).

7.      Within two weeks of the Court's oral pronouncements, Mr. Twohig withdrew from the instant case, and undersigned counsel came aboard to represent Mr. Wall.  (Doc. 55).

8.      Mr. Wall subsequently filed, through the undersigned counsel, *Defendant's Notice of Decision to Proceed with Sentencing*, rather than reinitiate plea negotiations with the Government or ask the Court to set aside his guilty plea and set the case for trial.  (Doc. 62 at 1).

9.      In the same pleading, Mr. Wall announced his intention to reorganize and supplement the financial information provided to the Probation Office by Mr. Twohig, so that a new Pre-

Sentence Investigation Report ("PSR") could be prepared with a better basis for Probation's proposed fine. (*Id.* at 3).

10.     Mr. Wall's Notice further included the undersigned counsel's request "to address, at a later time, whether the original sentencing agreement should be restored based on the lack of any personal breach of the Plea Agreement attributable to Defendant Wall." (*Id.* at 4 n.2). Counsel observed that "it is worth reflecting that Judge Reagan's Order of February 11, 2016 requiring a schedule of disclosures and the production of a complete PSR found only that *defense counsel*, not Mr. Wall himself, had been "less than forthcoming in responding to Probation's request and ha[d] been lax in adhering to his duty of candor to the Court." (*Id.* at 4) (citing Doc. 45 at 1).

11.     In the months since Mr. Wall's *Notice of Decision to Proceed with Sentencing* was filed, he has worked closely with the undersigned counsel to re-organize and collate documents previously submitted by his former counsel to the Probation Office, and to supplement them as needed, including additional materials not previously requested of his former counsel, like bank records that are, of necessity, continually updated. *See infra.*

12.     It has become clear during the course of the review of documents disclosed originally[1] by the former defense counsel to the USPO that the original historical financial records necessary to reach an accounting of the "total loss" pursuant to USSG ¶2B1.1 (relevant to the Offense Level), Application Note 3(F)(v) and "pecuniary gain" under USSG ¶8A1.2, Application Note 3(H) (relevant to the fine amount) had already been provided to the USPO by Mr. Twohig. Admittedly, this disclosure occurred in an untimely fashion under Judge Reagan's Order, apparently in a single "dump" of 1,000 pages, and, at least initially, without explanation or cross reference.

---

[1] The materials were originally provided on a CD disclosed by the defense to USPO K. Thomas on February 4, 2016 and later in hard copy at the end of February 2016.

# ARGUMENT

There are three reasons why the Court should reconsider its decision to reject the Fed. R. Crim. P. 11(c)(1)(C) agreement to probation: *First,* because the financial records needed to complete the computation of loss and pecuniary gain amounts were in fact provided to the USPO well before the rejection of the sentencing concession contained in the Plea Agreement; *Second,* because the rejection of the sentencing concession penalizes Mr. Wall, not for any failures on his part to comply with the directives of the USPO, but for the actions of his former defense counsel; and *Third,* the decision to abandon efforts to determine a correct restitution amount by the Government, the USPO, and ultimately the Court (Judge Reagan) should not be held against Mr. Wall given the fact that the reason was simply the difficulty in determining a restitution amount, not because of any action by Mr. Wall himself.

I.  **The Documents Necessary to Determine the Core Guideline Calculations for Offense Level (Total Loss) and Fine Amount (Pecuniary Gain) were in the Hands of the USPO Before the Court Rejected the Sentencing Provisions in the Plea Agreement.**

The problems with the documents proffered by defense counsel are described by the Court at Plea Hrg Transcript 8:10:

```
10   delivered a binder to Probation with approximately 1,000 pages of
11   information, documents that purportedly described Mr. Wall's net
12   worth and the sale of crops he had made in 2010.  The Probation
13   Office observed that the binder contained receipts that were
14   handwritten by Mr. Wall.  However, the Probation Office advised
15   the Court that the information was incomplete, dated,
16   insufficient, and very difficult to decipher.  For that reason,
```

Although the documents were not organized or explained sufficiently for the USPO to make sense of them, the 1,000 pages disclosed by former defense counsel did in fact contain the basic

historical data that allowed for an accurate accounting of total sales as well as pecuniary gain for purpose of applying the Guidelines.

For example, because the reasonable accuracy of Mr. Wall's handwritten sales notes has been confirmed by the defense expert forensic accountant Anne Layne, who compared the numbers with USDA published sale and yield data for those years, there is no reason to believe the notes are incomplete or insufficient.

## II. Mr. Wall Should Not Be Punished for the Actions of His Former Counsel.

"A district court enjoys substantial discretion in deciding whether to accept or reject a plea agreement." *U.S. v. Vanderwerff,* 788 F.3d 1266, 1271 (10th Cir. 2015). However, "that discretion is not unfettered." *U.S. v. Fokker Services B.V.,* 818 F.3d 733, 745 (2016). *See also United States v. Moore*, 916 F.2d 1131, 1136 (6th Cir. 1990) ("By leaving the decision whether to accept or reject a plea to the exercise of sound judicial discretion, the Supreme Court did not intend to allow district courts to reject pleas on an arbitrary basis"). Specifically, "when a district court predicates its ruling on an 'improper and irrelevant factor,' this error 'provides a strong indication that the district court abused its discretion.'" *Vanderwerff,* 788 F.3d at 1271 (district court's rejection of plea agreement because it contained an appellate waiver was abuse of discretion) (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1132 (10th Cir. 2010)).

Mr. Wall urges the Court to use its discretion to restore the sentencing agreement to probation, as it would be improper to penalize him for actions and omissions − committed solely by his former counsel, without his authority or input − which should not be attributed to him. It is, in fact, undisputed that he provided Mr. Twohig with every document that Mr. Twohig sought from him, throughout the disclosure process. *See* 9/21/16 Hearing Tr. at 12:20 (Mr. Twohig asserting at Plea Agreement Hearing that "…I want the Court also to know that my client has provided me

6

everything I've asked him….", which the Government did not challenge).  The Court appeared to

acknowledge that the fault, if any, should lie with Mr. Twohig when it described how, following

Visiting Judge Reagan's setting a discovery schedule, all that remained "was for *defense counsel* to

provide Probation with all documentation requested," (9/21/16 Hearing Tr. at 8:2-8:3), and how

"*defense counsel* failed to comply with Judge Reagan's order."  *Id.* at 8:8-8:9 (emphasis added).

However, the Court ultimately concluded that "Mr. Wall's failure to cooperate with Judge Reagan's

order" was evidence that "Mr. Wall has violated the terms of his plea agreement" − despite not

finding that Mr. Twohig's approach was reflective of any bad acts by Mr. Wall himself.  *Id.* at 10:3-

10:4, 10:10.

  The undersigned counsel searched extensively but could not locate a case in which a court

was tasked with determining whether *defense counsel's* own misconduct, subsequent to the

formation of a plea agreement, was a proper, relevant factor on which a district court could rely in

rejecting the agreement.  However, he urges the Court to reconsider whether such a step is

appropriate where, as here, the negligent acts of counsel could result in the client's loss of freedom.

While Mr. Twohig was acting as Mr. Wall's agent during the relevant time period, Mr. Wall (a

layperson farmer with a high-school education), was in no position to second-guess the manner in

which his counsel disclosed complex financial records to the Probation Office, or to appreciate

whether the thousands of pages of documents submitted by Mr. Twohig should have been organized

differently, for the Probation Officer's ease of review.

  Moreover, as described above, Mr. Wall's counsel's deficiencies in complying with the

Court's order were not as glaring as was once believed.  Mr. Twohig produced documents to the

Probation Office on eight separate occasions between October 23, 2015 and July 25, 2016.  Several

of the later submissions were comprehensive and tabbed, prepared by the forensic accounting firm of

McHard Accounting Consulting LLC. Admittedly, more than one miscommunication occurred between Mr. Twohig and the Probation Office along the way, including when Probation Officer Kara Thomas could not open too-large document attachments sent by Mr. Twohig via e-mail, and subsequently prepared the PSR without the benefit of them, before Mr. Twohig learned of the faulty submission and resubmitted the documents by other means.  Again, Mr. Wall urges the Court not to penalize him for miscommunications and delays that he was in no position to know about, let alone rectify in time to comply with the Court's order.

Once alerted by the Court to the insufficiency of his former counsel's prior submissions to Probation, Mr. Wall has worked closely with the undersigned counsel to, once again, provide any information asked of him.  Since joining the case in October 2016, the undersigned counsel has submitted to the Probation Office

- a letter of January 27, 2017, including a current Net Worth Statement and three-ring binder containing documents offered in support of Mr. Wall's proposed net worth figure, organized by subject (Bank Accounts, Securities, Life Insurance, Motor Vehicles, Real Estate, Other Assets, Business Holdings, Income Tax Returns, Charge Accounts, and Other Debts);

- a letter of March 1, 2017, including a current Monthly Cash Flow Statement, an explanation of how the statement represents Mr. Wall's best estimate of his cash inflows and outflows, and a three-ring binder containing "only the most pertinent and basic documentation in support of the cash flow," so as not to burden Probation with outdated or superfluous information;

- a letter of May 24, 2017, including various spreadsheets relevant to the application of the U.S. Sentencing Guidelines to this case prepared by McHard Accounting Consulting LLC, further including a tabbed three-ring binder containing supporting documents, with thorough cross-references to the basis for each conclusion made therein; and

- a May 25, 2017, letter with an updated Monthly Cash Flow Statement, reflecting the effects of the sale of Mr. Wall's properties in Texas in exchange for an agreement by the bank to refinance his loans for his other farm operations, with all updated information highlighted and color-coded for the convenience of the reader.

The undersigned counsel has worked with Mr. Wall to make his updated submissions considerably easier to decipher by cross-referencing documents to spread sheets, utilizing charts and additional

narratives where appropriate, and amplifying requested financial information with clear explanations

of how counsel arrived at the proffered numbers. Net Worth Statements previously filled out by Mr.

Wall by hand, with little guidance, have been redone digitally by an experienced paralegal, with

attachment pages, footnotes, and highlighting where appropriate. In this way, the undersigned

counsel has reorganized and amplified the raw material previously provided by Mr. Twohig to arrive

at gain-loss calculation on which Probation can reasonably rely in determining a proposed fine. Mr.

Wall has been a genuine partner in the production process, as it has never been his intention to do

anything other than comply with the duties required by a reasonable Plea Agreement freely offered

and repeatedly endorsed by the Government. *See, e.g.,* 5/14/15 Plea Hearing Tr. at 14:12-14:18

(Assistant U.S. Attorney Mysliwiec representing to the Court that the Government "certainly [did]

not" object to keeping Mr. Wall out of custody, and that "the United States specifically contemplated

[ ] and put a stipulation in the plea agreement that it's not our desire to have Mr. Wall's right to bear

arms abridged through this plea agreement").

Accordingly, Mr. Wall urges the Court to consider both his former and current counsel's

affirmative representations of his compliance with the sentencing process in reconsidering its

decision to attribute the dilatory conduct of his former counsel to him.

### III. The Decision by the USPO, Government and Ultimately the Court Not to Seek Restitution Should Not Be Held Against Mr. Wall, Particularly Where a Charitable Donation Could Be Part of the Sentence.

The other reason cited by the Court for its rejection of the Sentencing Agreement was

likewise beyond Mr. Wall's control. The Government informed Judge Reagan it would no longer

seek restitution "because the two primary victims have not submitted any claims," and because "any

potential consumer victims are too voluminous and are unidentifiable." (Doc. 46 at 1). Judge

Reagan adopted this finding, holding that "the number of identifiable victims is so large as to make

restitution impracticable" and that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." (Doc. 47 at 1-2) (quoting U.S.S.G. § 5E1.1(b)). This Court then pointed to the impracticability of Mr. Wall's making restitution as a basis for rejecting the Sentencing Agreement. 9/21/16 Hearing Tr. At 11:2-11:16.

Mr. Wall submits that he should not be exposed to a possible term of incarceration based on the failure of two alleged victims to submit claims. *See supra.* Nor should the Probation Office's inability to determine the identities of the consumer victims in this case be held against him. While he of course recognizes that the Court has discretion to reject a sentencing agreement for being too lenient, he urges it to consider the fact that he stands ready and willing to help offset the leniency resulting from the Government's decision. As noted above, Mr. Wall proffers to the Court his willingness to amend by making a sizable charitable contribution to the NM Farmer's Marketing Association, a 501(c)(3) nonprofit organization supporting New Mexico farmers and communities by providing public education, food access programs, and technical assistance and advocacy. *See* www.farmersmarketsnm.org. Such a penalty would go some distance towards directly remedying the damage caused by Mr. Wall's admitted misbranding of blue corn and peanuts in 2010, while allowing him to continue providing a living to his employees and an economic boost to his community, which he can only do out of custody.

The Court may find instructive on this point the district court's ruling in *U.S. v. Purdue Frederick Co., Inc.,* 495 F.Supp.2d 569 (W.D. Va. 2007). In *Purdue,* the district court accepted a plea agreement that allowed the individual defendants in a white-collar fraud case – corporate officers who falsely marketed OxyContin as less addictive than other pain medications − to plead

guilty to misdemeanor misbranding, but did not require them to make restitution because of "the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution." *Id.* at 573. While the district court noted that it "would have preferred that the plea agreements had allocated some amount of [ ] money for the education of those at risk from the improper use of prescription drugs, and the treatment of those who have succumbed to such use," it held that it would "not reject these agreements simply because they do not contain provisions that I would have preferred." *Id.* at 575-76. Accordingly, the court looked to facts including the defendants' "lack of prior criminal record" and "strong commitment to civic and charitable endeavors" to accept the plea, over third-party objections. *Id.* at 576.

Counsel for the United States, through Assistant United States Attorney Paul Mysliwiec, opposes this motion.

**CONCLUSION**

It is clear from the Government's own admissions in the plea hearing transcript that the Government entered the instant sentencing agreement with Mr. Wall because it did not believe his offense warranted prison time and wanted to ensure that he maintained the full panoply of his constitutional rights. *See* 5/14/15 Plea Hearing Tr. at 15:14-15:17 (AUSA Mysliwiec explaining to the Court, unprompted, that Mr. Wall and his wife "need to have access to firearms" to protect themselves and "their calves" from coyotes and other predators). Mr. Wall himself has done nothing to alter that view. He therefore urges the Court to exercise its substantial discretion to restore the original sentencing provision of probation in this case.

Respectfully submitted,

ROTHSTEIN DONATELLI LLP

/s/ Peter Schoenburg_____
PETER SCHOENBURG
ALICIA C. LOPEZ
500 Fourth Street N.W., Suite 400
Albuquerque, NM  87102
(505) 243-1443
pschoenburg@rothsteinlaw.com
alopez@rothsteinlaw.com

*Attorneys for Houston Wall*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of June, 2017 I filed the foregoing

electronically through the CM/ECF system, which caused the following parties or counsel to be

served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Paul Mysliwiec
Assistant United States Attorney
paul.mysliwiec@usdoj.gov

/s/ Peter Schoenburg_____
ROTHSTEIN DONATELLI LLP