IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

                                        Crim. No. 15-621 MV

   v.

HOUSTON WALL,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the United States' Third Motion for a Felony Trial Setting. [Doc. 90]. The Defendant, Houston Wall, opposes the motion. Based upon the pleadings of the parties, the facts of this case and applicable law, the government's motion is hereby denied.

## I. Background

On February 25, 2015, the government filed an Indictment charging Mr. Wall with one felony count of violation of 18 U.S.C. § 1001(a)(3) and Title 7 C.F.R. Part 205—knowingly, making a false statement of a material fact in an application for organic certification that he would fully comply with all applicable organic production regulations when in truth and in fact, he was not in compliance with the organic production regulations in accordance with the National Organic Program rules, and had failed to notify and would continue to fail to notify the New Mexico Organic Commodities Commission about such violations. [Doc. 2]. On May 14, 2015, the government filed an Information charging Mr. Wall with one misdemeanor count of misbranding and selling foods as "organic," in violation of 21 U.S.C. §§ 331(b) and 333. [Doc. 21]. The same date, Mr. Wall pleaded guilty to the misdemeanor count. [Doc. 25].

As part of the plea agreement, Mr. Wall admitted that:

- From August through December of 2010, he grew cotton and foods (blue corn, yellow corn, peanuts and wheat) using chemical pesticides and growth agents, but misbranded them as "organic" and sold them to various customers who were in other states and who he knew would sell some of the foods in other states as well as in New Mexico. He knew the foods and cotton he was growing and selling did not meet the definition because of the specific chemical pesticides and growth agents he used to grow them, but misbranded them in order to get better prices for them and make more money.

- He understood his obligation to provide the U.S. Pretrial Services and Probation Office with truthful, accurate and complete information and represented that he had complied with and would continue to comply with this obligation.

- Except under circumstances where the Court, acting on its own, rejected the plea agreement, he agreed that upon his signing of the plea agreement, the facts that he admitted under the plea agreement, as well as any facts to which he admitted in open court at his plea hearing, would be admissible against him under Fed. R. Evid. 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and he waived his rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 with regard to the facts he admitted in conjunction with the plea agreement.

*Id.* at 5-6.

For its part, the government agreed that, provided Mr. Wall fulfilled his obligations under the Plea Agreement, after sentencing on the Information, it would move to dismiss the indictment pending against him and would not bring additional criminal charges against him. *Id.* at 7-8, ¶ 17. Both Mr. Wall and the government agreed that restitution was appropriate in the case to those who purchased the misbranded foods and commodities, and that the exact amount of restitution should be determined by the Court after the presentation of evidence and argument at sentencing. *Id.* at 5.[1] After signing the plea agreement, Mr. Wall participated in a colloquy

---

[1] Subsequently, at the government's request, Judge Michael Reagan designated the matter as a Multiple Victim case under the Justice for All Act of 2004, 18 U.S.C. § 3771, and § 5E1.1(b) of the United States Sentencing Guidelines, stating that "the number of identifiable victims is so large as to make restitution impracticable" and "determining complex issues of fact related to the cause of amount of the victim's losses would complicate or prolong the sentencing process to a

under oath, during which he affirmed his admissions and acceptance of the terms of the plea agreement. [Doc. 22].

Afterwards, however, Mr. Wall's attorney, Ray Twohig, failed to provide the Probation Office with truthful, accurate and complete information. As a result, United States District Judge Michael Reagan found "that defense counsel has been less than forthcoming in responding to Probation's requests and . . . has been lax in adhering to his duty of candor to the Court." [Doc. 45 at 1]. Additionally, Judge Reagan concluded that "the methodology used by the government to calculate the loss at issue, and therefore the potential fines, may be superseded by this data at a significant loss of time and productivity at the government's expense that could easily have been avoided." *Id.*

Thereafter, at a September 21, 2016, hearing, the Court concluded that "Mr. Wall's failure to cooperate with Judge Reagan's order made during the telephonic conference of February 10th, 2016, and his failure to respond to the Probation Office's many requests for adequate information to calculate loss and Mr. Wall's net worth and ability to pay a fine make it impossible for this Court to accept the parties' stipulated sentence of five years." [Doc. 54 at 10]. In compliance with Fed. R. Crim. P. 11(c)(5), the Court advised Mr. Wall:

> My obligation now, Mr. Wall, is to advise you that I'm not required to follow the Plea agreement and you have the opportunity to withdraw your plea. If you do not withdraw your plea, the Court can proceed with sentencing and can dispose of your case in a manner that is less favorable than the terms that are contemplated in your plea agreement.

[Doc. 54 at 11]. Subsequently, Mr. Twohig withdrew and new counsel, Peter Schoenburg and Alicia C. Lopez, with Rothstein Donatelli LLP, entered their appearance as Mr. Wall's counsel.

---

degree that the need to provide restitution to any victims is outweighed by the burden on the sentencing process." [Doc. 47].

[Docs. 55-56].  New counsel fully cooperated in providing complete and accurate financial information to Probation.

On June 15, 2017, Mr. Wall filed a Motion to Restore, in Part, the Rule 11(c)(1)(C) Sentencing Agreement to Five Years Probation.  [Doc. 69].  During the September 19, 2107, sentencing hearing, the Court denied the motion with respect to the probation provision.  [Doc. 88 at 5].  The Court stated:

> Mr. Wall has filed a Motion to Restore in part [the] Rule 11(c)(1)(C) Sentencing Agreement to five years probation, and he asks the Court to reinstate the Plea Agreement's recommendation by the Government and Mr. Wall that he be sentenced to five years probation.  The Government opposes the motion.  The Court has previously denied this motion at the beginning of this hearing as to the guarantee for probation.  *All other provisions remain intact.*

*Id.* at 100 (emphasis added).  Counsel for Mr. Wall then expressed concern that the government had, as recently as August 2017, renewed its request for a trial date on the unresolved felony charge, stating:

> Well, there has been no finding of the Court of a breach of the Plea Agreement.  In fact, your decision was within your discretion, I'm not going to accept a portion of the 11(c)(1)(C) Sentencing Agreement; namely, the guarantee of probation.
>
> I respect the Court's discretion to do that.  I understand the Court's ruling denying my Motion to Restore, but, nonetheless, I want the procedural posture of this case to be clear to all sides that we are, in fact, operating under the remaining parts of the Plea Agreement that assures that the felonies will be dropped and we're proceeding now to sentencing on a misdemeanor only.

*Id.* at 6.  The Court responded:

> Okay.  That is my understanding.

*Id.*  Later in the hearing, the Court stated:

> Mr. Wall has filed a Motion to restore in part Rule 11(c)(1)(C) Sentencing Agreement to five years probation, and he asks the Court to reinstate the Plea Agreement's recommendation by the Government and Mr. Wall that he be sentenced to five years probation.  The Government opposes the motion.  The Court has previously denied this motion at the beginning of this hearing as to

the guarantee for probation. *All other provisions remain intact.*

*Id.* at 100 (emphasis added).

Ultimately, after hearing evidence and arguments of the parties, and notwithstanding its denial of Mr. Wall's motion, the Court sentenced Mr. Wall to five years of probation and assessed a $50,000 fine for the misbranding charge. [Docs. 87-89].

The government has appealed the sentence, and now seeks a trial setting of the felony charged in the indictment. [Docs. 90, 93]. It asserts that the Court's September 21, 2016, rejection of the sentencing agreement "entailed the legal consequence of releasing the parties from the plea agreement," and that "[e]ven if the plea agreement were still in full force and effect, the bargain struck between the parties bound the United States to dismiss the pending felony only if 'Defendant fulfill[ed] the Defendant's obligations as set out [in the plea agreement].'" [Doc. 90 at 3].

## II. Discussion

Rule 11(c)(1) provides, in pertinent part:

**Plea Agreement Procedure.**

> **(1) In General.** An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:
>
> > **(A)** not bring, or will move to dismiss, other charges;
> > **(B)** recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court); or
> > **(C)** agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request

binds the court once the court accepts the plea agreement).

\* \* \*

**(3) Judicial Consideration of a Plea Agreement.**

**(A)** To the extent the plea agreement is of the type specified
in Rule 11(c)(1)(A) or (C), the court may accept the agreement,
reject it, or defer a decision until the court has reviewed the
presentence report.

\* \* \*

**(5) Rejecting a Plea Agreement.** If the court rejects a plea agreement
containing provisions of the type specified in Rule 11(c)(1)(A) or (C),
the court must do the following on the record and in open court (or,
for good cause, in camera):

**(A)** inform the parties that the court rejects the plea agreement;
**(B)** advise the defendant personally that the court is not required
to follow the plea agreement and give the defendant an opportunity
to withdraw and plea; and
**(C)** advise the defendant personally that if the plea is not withdrawn,
the court may dispose of the case less favorably toward the defendant
than the plea agreement contemplated.

In *United States v. Ready*, the Second Circuit set out the following rules for interpretation

of plea agreements:

First, courts construe plea agreements strictly against the Government. This is
done for a variety of reasons, including the fact that the Government is usually
the party that drafts the agreement, and the fact that the Government ordinarily
has certain awesome advantages in bargaining power.

Second, we construe the agreement against a general background understanding
of legality. That is, we presume that both parties to the plea agreements
contemplated that all promises made were legal, and that the non-contracting
"party" who implements the agreement (the district judge) will act legally in
executing the agreement.

Finally, . . . *courts may apply general fairness principles to invalidate particular
terms of the agreement.*

82 F.3d 551, 559 (2d Cir. Cir. 1996), *superseded on other grounds as stated in United States v.*

*Cook*, 722 F.3d 477, 481 (2d Cir. 2013) (citations and quotations omitted) (emphasis added).

It is well-settled that "courts construe plea agreements strictly against the Government for a variety of reasons," among them "the fact that the Government is usually the party that drafts the agreement, and the fact that the Government ordinarily has certain awesome advantages in bargaining power." *United States v. Mergen*, 764 F.3d 199, 208-09 (2d Cir. 2014) (citing *United States v. Ready*, *supra*).

Here, having concluded that Mr. Wall's previous attorney had improperly stonewalled the government on discovery production, the Court invalidated the sentencing recommendation of the parties. However, as it stated during the sentencing hearing, it did not invalidate the remainder of the plea agreement. And, as previously noted, current counsel for Mr. Wall fully complied with Probation's requests for financial documents. Accordingly, pursuant to Paragraph 17 of the plea agreement, which remains in full force and effect, the government is barred from bringing additional criminal charges against Mr. Wall and has an obligation to dismiss the indictment against him.

The government's Third Motion for a Felony Trial Setting his hereby denied.

ENTERED this 13th day of December, 2017.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE


Peter Schoenburg and Alicia C. Lopez          Paul Mysliwiec

Rothstein Donatelli LLP                       ASSISTANT UNITED STATES ATTORNEY

*Attorneys for Mr. Wall*                      *Attorney for the United States*

7